IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 04-39037-H4-7 |
| | § | (Chapter 7) |
| ANTHONY REED WATSON AND | § | |
| KARI KATHLEEN HILL WATSON, | § | |
| | § | |
| Debtors. | § | |
| | § | |
| WILLIAM WEST, | § | |
| CHAPTER 7 TRUSTEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Adv. No. 04-3924 |
| | § | |
| SAM R. PARKER, TRUSTEE OF | § | |
| THE WATSON GRANDCHILDREN'S | § | |
| LONG TERM TRUSTS NO. 1, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION ON PLAINTIFF'S MOTION FOR SUMMARY
JUDGEMENT AND DEFENDANT SAM R. PARKER'S MOTION FOR SUMMARY
JUDGEMENT
(DOCKET NOS. 10 AND 12)

On May 12, 2005, a hearing was held on both Plaintiff's Motion for Summary Judgement ("Plaintiff's Motion") and Defendant's Motion for Summary Judgement ("Defendant's Motion") in the above styled case. This Court believes the position of the Plaintiff is meritorious as a matter of law and therefore holds that the Defendant, Sam R. Parker ("Defendant"), in his capacity as trustee of the Watson Grandchildren's Long Term Trusts No. 1 ("the Trust"), is required to turn over to the

1

Chapter 7 Trustee ("West") the Debtor's one-third interest in certain Trust assets in accordance with the Trust Agreement as delineated herein.

## I. FACTUAL BACKGROUND AND RELEVANT PROCEDURAL HISTORY

The hearing on the Motions for Summary Judgement was held on May 12, 2005. The relevant facts were established by affidavits attached to the Plaintiff's Motion and Defendant's Motion, by reference to the record in this case, and by assertions made by counsel of record in pleadings and at the hearing, which constitute judicial admissions.

The relevant facts, in chronological order, are as follows:

(1)     On November 11, 1987, Austin Ball Watson (the "Settlor") established the Trust for the benefit of his three grandchildren (the "Primary Beneficiaries.") The Trust property is divided into shares of equal value, one share for each primary beneficiary to be held and administered as a separate trust.

(2)     The Trust Agreement contains provision §2.01(2), "Primary Beneficiary's Right to Withdraw," that allows a Primary Beneficiary of the Trust to withdraw funds from the Trust under specific circumstances. §2.01(2) reads in pertinent part:

> "To the extent any addition by gift (including the original addition) is made to a Primary Beneficiary's Trust, the Primary Beneficiary may demand withdrawal, at any time from the date of the addition until thirty (30) days after the date he receives written notice of such addition, of an amount equal to the market value of the addition on the date of the gift . . . . To the extent no withdrawal demand is made within thirty (30) days of the date the Primary Beneficiary receives written notice of any such addition, the right to make such demand shall lapse. Each such withdrawal demand shall be exercisable only by a written instrument (executed by or on behalf of the beneficiary having right of such demand) delivered to the . . . Trustee on or before the expiration of the thirty (30) day period in which the beneficiary receives

written notice of his demand right, and the thus demanded amount shall be payable immediately upon receipt of such written instrument. . . . Each beneficiary designated as having a withdrawal right with respect to any addition or additions . . . shall be given written notice by the Trustee within seven (7) days following the date that each withdrawable addition is made."

(3) §2.01(2) of the Trust Agreement limits the dollar value of a Primary Beneficiary's withdrawal in any one calendar year as follows:

"However, the maximum aggregate amount which may be withdrawn by any Primary Beneficiary in any calendar year pursuant to his demand rights shall be limited in value at the time of withdrawal to the maximum amount which would not have been considered a release of a general power of appointment under Section 2041 (B)(2) of the Code [Internal Revenue Code of 1954, as amended] if such demand rights had not been exercised and had lapsed during the same calendar year."

(4) The Trust Agreement contains additional provision §2.05, "Spendthrift Trust," which reads as follows:

"No part of the income or principal of any Trust estate shall ever be transferred or assigned by any beneficiary or distributee before the same has been paid. No part of the interest of any beneficiary or distributee shall in any event be subject to sale, hypothecation, assignment, or transfer, nor shall any part of such principal or income be seized, attached, or in any manner taken by judicial proceedings against any beneficiary or distributee on account of the divorce, debts, assignments, sale, or encumbrance of any beneficiary or distributee. In accordance with these provisions, the Trustee shall pay to the beneficiary or distributee the sum payable to him according to the Trust terms hereof, notwithstanding any purported sale, assignment, hypothecation, transfer, attachment, or judicial process, exactly as if the same did not exist. Nothing contained in this Section shall be construed as restricting in any way the exercise of any power of appointment granted in this Agreement."

(5) The Trust Agreement further provides that the Defendant, as trustee, in his sole discretion, has the power to accumulate all or part of the net income of the Trust or to distribute any part of the income or principal for the comfort and welfare of the Trust's beneficiaries. See Trust Agreement §2.01(3).

(6) As soon as practicable after the Primary Beneficiary of one of the individual sub-trusts attains thirty years of age or dies, whichever is earlier, the Defendant, as trustee, is required to distribute all principal and undistributed income remaining in such Primary Beneficiary's sub-trust to such Primary Beneficiary. See Trust Agreement § 2.01(4).

(7) Anthony Reed Watson ("Debtor") is one of three of such named Primary Beneficiaries under the Trust. The Debtor was born November 10, 1975 and will attain age thirty on November 10, 2005.

(8) On June 29, 2004, the Debtor filed a Chapter 7 petition, which created the Debtor's Chapter 7 bankruptcy estate (the "Estate.")

(9) The Debtor disclosed to West, as the Chapter 7 trustee, that he, i.e., the Debtor, was a beneficiary of the Trust as of the Petition Date.

(10) The Settlor paid into the Trust the following gifts, all in cash:
- 1987: $ 8,100.00
- 1988: $ 47,320.00
- 1989: $ 47,320.00
- 1990: $ 47,320.00
- 1991: $ 47,320.00
- 1992: $ 47,320.00
- 1993: $ 47,320.00
- 1994: $ 47,320.00

$339,340.00

(11)   The Defendant has served continuously as the trustee of the Trust since its inception.

(12)   The Debtor did not receive written notice of any additions to the Trust from the Defendant as specified in §2.01(2) of the Trust Agreement.

(13)   The Defendant, in his capacity as trustee, does not claim to have given notice to the Debtor of any additions to the Trust as specified in §2.01(2) of the Trust Agreement.

(14)   By letter dated October 6, 2004, counsel for West, on behalf of the Chapter 7 bankruptcy estate, made written demand by letter, sent by certified mail upon Defendant in his capacity as trustee, which states in part as follows:
"Pursuant to paragraph 2.01(2) of the Watson Grandchildren's Long Term Trusts No. 1, . . . [West] hereby demands the withdrawal of all additions to the trust for the benefit of Mr. Watson [the Debtor] that are related to the insurance proceeds received due to the death of Mr. Watson's grandfather."

(15)   The Defendant signed for receipt of such letter on October 9, 2004.

(16)   The Defendant, in his capacity as trustee of the Trust, has not made any payments to West despite having received the letter from West's counsel.

(17)   Total assets in the Trust on the Petition Date had a value of $569,945.47.

(18)   On April 20, 2005, West filed Plaintiff's Motion for Summary Judgement on behalf of the Chapter 7 bankruptcy estate requesting, under §2.01 (2) of the Trust Agreement, one-third of all Trust assets as of June 29, 2004, i.e., $189,981.82 ($569,945.47 x 1/3). At the hearing, Plaintiff modified this request to be one-third of all additions made by the Settlor to the Trust, i.e., one-third of $339,340.00, or $113,114.00.

(19) Plaintiff's Motion further alleged breach of trust by the Defendant, in his capacity as trustee of the Trust, and requested an award of attorney's fees and costs under §114.064 of the Texas Property Code. Specifically, the Plaintiff seeks an award of 40 percent of the amount recovered from the Trust, as this Court previously approved such a contingency fee arrangement for Chapter 7 Trustee's counsel.

(20) On April 22, 2005, the Defendant filed Defendant's Motion for Summary Judgement requesting judgement that Plaintiff take nothing.

(21) A hearing on both motions was held on May 12, 2005 at 9:00 a.m. The Court heard the arguments of parties and took the matter under advisement.

## II. DISCUSSION

### A. Plaintiff's General Argument

Plaintiff's Motion requests that this Court require Defendant, as trustee of the Trust, to turn over to West, as Chapter 7 Trustee of the bankruptcy Estate, the Debtor's interest in one-third of the total assets which Settlor had transferred to the Trust. Plaintiff's argument is as follows:

At the time Debtor filed the Petition, the Estate was created and comprised all legal and equitable interests of the Debtor in property as of the Petition Date. 11 U.S.C. §541 (a)(1). The Estate also includes any interest in property that the Estate might acquire after commencement of such case. 11 U.S.C. §541(a)(7). The Fifth Circuit has recognized that such property also includes those "powers that the debtor can exercise for its own benefit over property regardless of the title debtor may be acting under." *Askanase v. Livingwell, Inc.*, 45 F.3d 103, 106 (5th Cir. 1995).

§2.01(2) of the Trust Agreement created in the Debtor, as a Primary Beneficiary, a right to demand withdrawal of additions to the Trust made by the Settlor. The Trust Agreement provides that a Primary Beneficiary's unrestricted right to withdrawal for each addition began on the date of deposit with the Trust and, by explicit language in the Trust Agreement, continued indefinitely until thirty days after the Primary Beneficiary received *written* notice of such addition from the Trustee. Since

written notice was neither given nor received, the Debtor still retained an unrestricted right of withdrawal on the Petition Date. Such right of withdrawal could be exercised by or on the Debtor's behalf by written instrument delivered to Defendant, as trustee, on or before expiration of the thirty-day period. Since West, as Chapter 7 Trustee, succeeded to the Debtor's rights, he delivered a demand letter on behalf of the Estate to the Defendant and awaited distribution.

The Defendant contests Plaintiff's assertions; therefore, West has waited in vain.

### B. Defendant's Rebuttal - Spendthrift Trust

Defendant's Motion asserts that the Trust is a spendthrift trust providing the trustee with uncontrolled discretion to distribute or not to distribute trust income or corpus. As such, pursuant to 11 U.S.C. §541 (c)(2), the beneficiaries, including the Debtor, have no beneficial interest which is includable in the Estate.

A spendthrift trust exists to prevent a beneficiary or his creditors from alienating the beneficiary from his interest in the income or the principal, or both, of such trust. See *Texas Commerce Bank National Association v. United States*, 908 F. Supp. 453, 457 (S.D. Tex. 1995). Texas provides for the creation of spendthrift trusts by statute:

> "(a) A settlor may provide in the terms of the trust that the interest of a beneficiary in the income or in the principal or in both may not be voluntarily or involuntarily transferred before payment or delivery of the interest to the beneficiary by the trustee.
>
> (b) A declaration in a trust instrument that the interest of a beneficiary shall be held subject to a "spendthrift trust" is sufficient to restrain voluntary or involuntary alienation of the interest by a beneficiary to the maximum extent permitted by this subtitle.
>
> (c) A trust containing terms authorized under Subsection (a) or (b) of this section may be referred to as a spendthrift trust."

TEX. PROP. CODE §112.035. As the Fifth Circuit noted, "[b]y vesting control of the trust in the trustee, denying the beneficiaries control over the trust, and denying creditors of the beneficiaries access to trust assets, the trust agreement qualifies as a spendthrift trust under Texas law." *Shurley v. Texas Commerce Bank (In re Shurley)*, 115 F.3d 333, 337 (5th Cir. 1997). In the case at bar, the Trust, by its terms, is a spendthrift trust. See Trust Agreement §2.05.

Section 541 of the Bankruptcy Code defines "property of the estate," which must be turned over to a bankruptcy trustee under Section 542. However, Section 541(c)(1) expressly exempts a "transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law. . . ." 11 U.S.C. 541(c)(2). The U.S. Supreme Court has stated as dicta the "congressional intent to *include* state spendthrift trust law within the meaning of 'applicable nonbankruptcy law.'" *Patterson v. Shumate*, 504 U.S. 753, 762 (1992) citing the legislative history at H.R. Rep. No. 95-595, 369 (1977). The Fifth Circuit has "recognized that a beneficiary's interest in a spendthrift trust is not subject to claims of creditors under Texas law. . . ." *Shurley*, 115 F.3d at 337; see also *Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1028 - 1029 (5th Cir. 1999).

The Defendant argues that, in *Bass*, the Firth Circuit held that where a trust qualifies as a discretionary or spendthrift trust under Texas law, a beneficiary has no ownership interest in the trust, and a bankruptcy court has no jurisdiction over the trustee. This Court does not disagree with that conclusion; however, the Fifth Circuit has specifically said:

> "A universal canon of Anglo-American trust law proclaims that when the trustee's powers of distribution are *wholly discretionary*, the beneficiary has no ownership interest in the trust or its assets until the trustee exercises discretion by electing to make a distribution to the beneficiary. Texas law is to the same effect. 'Where discretionary trusts are involved, the beneficiary has no right to trust income [or assets] until the trustee elects to irrevocably and unconditionally place it in the beneficiary's control.'"

*Bass*, 171 F. 3d at 1028 (citations omitted) (emphasis added).

In this instance, the trustee's powers of distribution under the Trust Agreement *are not wholly discretionary*. Until a Primary Beneficiary's right to withdrawal under §2.01(2) lapses, the Defendant, as trustee of the Trust, has no discretion. Upon written demand, he must pay the demanded amount immediately to the Primary Beneficiary. Consequently, until such right terminates through written notice and passage of time, this Court finds that the Debtor, as a Primary Beneficiary, does indeed have an ownership interest in Trust assets and had such interest on the Petition Date. This interest was not a prospective interest which might come into being at some future time but was, rather, a present ongoing interest. As such, the protection of inalienation falls away, and West, in his capacity as Chapter 7 trustee, may step into the Debtor's shoes and demand payment from the Defendant, but only to the extent provided for in §2.01(2). This ruling does not alter the character

of the Trust as a spendthrift trust; rather the present interest in assets which the Settlor himself created through clear and unambiguous language has remained at risk of alienation until such time as this present interest terminates.

The Defendant further argues that the Trust was designed to be an irrevocable life insurance trust established under the guidelines approved in *Crummey v. Commissioner of Internal Revenue*, 397 F. 2d 82 (9th Cir. 1968). Consequently, the Settlor's only purpose in creating a present interest in the Primary Beneficiaries was to enable him to make use of the federal annual gift tax exclusion, not to alter the nature of the Trust as a spendthrift trust and to expose assets to claims of potential creditors. Defendant would have the Court consider the *intent* of the Settlor in establishing the Trust and his *intent* for the right of withdrawal to be of limited duration. Were this Court required to consider the intent of the Settlor, the Court would conclude that while the Settlor had intended to create a spendthrift trust, he had also intended to create a present interest in the Primary Beneficiaries to effect his own purposes.

However, this Court is not required to contemplate the mind of the Settlor; instead, this Court must enforce the explicit language in the Trust Agreement. The Fifth Circuit has held that:

> "In interpreting a trust, 'resort is had in the first place to the instrument, if any, under which the trust is created. As to any matter expressly covered by the instrument, the provisions of the instrument, if unambiguous, determine the terms of the trust.'. . . Therefore, just as we must interpret a contract strictly and accord its words their literal, ordinary meaning, . . . we must enforce clear, unambiguous provisions of a trust agreement as they were written."

*Askanase*, 45 F.3d at 105 (citations omitted).

This Court finds that it must, indeed, follow the clear wording of the Trust Agreement. The Trust Agreement expressly requires the Defendant, as trustee, to give written notice to the Primary Beneficiaries of additions to the Trust. Only after written notice is received does the thirty-day time period begin running. It is worth noting that the Settlor, in drafting the Trust Agreement, could have allowed the demand provision to expire based on passage of time alone without regard to receipt of notice; this, he did not do. Following the clear and unambiguous language of the Trust Agreement, this Court will allow the Chapter 7 Trustee to stand in the shoes of the Debtor and demand withdrawal of one-third of all additions made by the Settlor to the Trust, i.e., $113,114.00.

9

C. **Notice Requirement**

The Defendant contends that during the Debtor's minority, his father as legal or natural guardian was aware of all additions to the Trust and therefore had either constructive notice or had waived notice. As discussed above, the express language of the Trust Agreement controls. Written notice was required for the thirty-day period to begin to run. Constructive notice was not sufficient to start the clock running.

D. **Limitation of Withdrawal**

Under §2.01(2) of the Trust Agreement, the maximum amount of any addition which the Debtor may actually withdraw from the Trust in any one calendar year is limited. This limitation is the greater of $5,000 or 5 percent of the aggregate value of the assets out of which the exercise of a lapsed power could have been satisfied. Since West has stepped into the Debtor's shoes, West's recovery on behalf of the Estate is so limited. Contrary to arguments made at the hearing, this language is in the Trust merely as a limiting device and can so be applied.

Total Trust assets as of the Petition Date were $569,945.47. One-third of that amount is $189,981.82[1], which is the amount out of which the exercise of a lapsed power could have been satisfied. Five percent of that amount is $9,499.09. Consequently, West was entitled to recover $9,499.09 in 2004. In 2005, West is entitled to recover an additional 5 percent of the remaining assets which, assuming no increase in value, would be $9,024.14, which is computed as follows: (a) $189,981.82 - $9,499.09 = $180,482.73; and (b) $180,482.73 x .05 = $9,024.14. Recovery for 2004 and 2005 therefore totals $18,523.23 ($9,499.09 + $9,024.14).

To the extent that the Debtor's individual portion of the Trust would have any assets remaining in 2006, West would be able to recover the greater of 5 percent of such amount or $5,000.00. However, the Debtor achieves age thirty on November 10, 2005 and Defendant, as trustee, is to make a final distribution under § 2.01(4) to the Debtor distributing remaining Trust assets to him as soon as practicable after that date. Thus, this Court considers it highly unlikely that the Trust would have any assets out of which West's future demand could be satisfied.

---

[1]To reiterate, on the Petition Date, the Debtor held a 1/3 interest in assets of the Trust.

E.   **Attorney's Fees**

Plaintiff has prayed for an award of attorney's fees alleging a breach of trust by Defendant due to his failure to remit assets following receipt of the Plaintiff's October 6, 2004 letter demanding withdrawal of assets under Trust Agreement §2.01(2). Defendant rebuts such allegation relying on §2.01(3), which gives him sole discretion as to whether to accumulate or distribute any part of the income or principal of the Trust. As discussed above, Defendant's discretion under §2.01(3) is overridden by the Debtor's present right to withdrawal as Primary Beneficiary under §2.01(2).

A trustee commits a breach of trust if he fails to carry out the express terms of a trust. *Griffen v. Hale*, 112 S.W.2d 1042, 1044 (Tex. 1938). This Court finds that failure to pay over assets to West, as Chapter 7 Trustee standing in the shoes of the Debtor, was a breach of §2.01(2). A beneficiary is entitled to an award of costs and reasonable attorney's fees under §114.064 of the Texas Property Code if the trustee commits a breach of trust. See also *Hoenig v. Texas Commerce Bank, N.A.*, 939 S.W.2d 656, 662 (Tex. App.-San Antonio 1996, no writ).

This Court finds that the Defendant's failure to remit to the Chapter 7 Trustee under Trust Agreement §2.01(2) constituted a breach of trust and gives rise to an award of reasonable attorney's fees. Such fees have been set at 40 percent in the "Order Authorizing Employment of Attorneys" signed by this Court on January 13, 2005. Consequently, Plaintiff is awarded attorney's fees equal to 40 percent of the total amount he recovers from the Trustee. Currently, the amount of recovery is $18,523.23, and therefore attorney's fees are 40 percent of $18,523.23, or $7,409.29. To the extent the Trust has assets, related to the Debtor's one-third interest, in years subsequent to 2005 out of which the total $113,114.00 award can be further satisfied, attorney's fees will increase commensurately.

### III. CONCLUSION

The Trust is indeed a spendthrift trust under Texas law. However, apparently to avail himself of the annual gift tax exclusion, the Settlor provided for an unrestricted present interest in additions to the Trust to vest in the beneficiaries. The Ninth Circuit has found that the fact that a trust is a spendthrift trust does not keep a demand provision from creating an unrestricted present right in property. *Crummey*, 397 F.2d at 85. While it may have been the Settlor's intent for such present

11

interests to expire after a short time, the actual language of the Trust Agreement and the actions, or nonactions, of the Defendant, as trustee, caused such present interests to remain in effect on the Petition Date. Consequently, while these rights were created through the vehicle of a spendthrift trust, they were not themselves subject to the spendthrift provisions and are therefore not excluded from the property of the Estate under 11 U.S.C. 542(c)(2).

Nonetheless, the Debtor is limited by Trust Agreement §2.01(2) in the amount he may withdraw in any calendar year. This limitation will also apply to West, who stands in the Debtor's shoes but no higher. *Bass*, 171 F.3d at 1028. Therefore, Defendant, as trustee, must turn over to West, as Chapter 7 Trustee, one-third of all additions made by the Settlor to the Trust as limited by Trust Agreement §2.01(2), which currently totals $18,523.23 ($9,499.09 for 2004 and $9,024.14 for 2005.)

Furthermore, this Court finds that Plaintiff is entitled to attorney's fees in the amount of 40 percent of the current total award of $18,523.23, or $7,409.29.

The sum of $18,523.23 and $7,409.29 is $25,932.52. It is this amount for which the Defendant is currently liable to the Plaintiff.

In the event the Defendant does not make a final and complete distribution with respect to the Debtor of Trust assets under Trust Agreement §2.01(4) in 2005 and assets remain within the Trust in subsequent years, Plaintiff is entitled to further recover a portion of such assets, as limited in §2.01(2), to further satisfy the total demand rights of one-third of all Trust additions ($113,114.00.) In such event, attorney's fees shall be automatically added by multiplying 40 percent times the amount paid by the Defendant to Plaintiff.

A separate order consistent with this Opinion will be entered simultaneously on the docket.

SIGNED this 1st day of June 2005.

JEFF BOHM
UNITED STATES BANKRUPTCY JUDGE